Ashburn v. Ashburn.

---

RUSSELL ASHBURN, Plaintiff and Appellant, v. ROBERT E. ASHBURN, Defendant and Appellant.

**St. Louis Court of Appeals, April 28, 1903.**

1. **Divorce:** INDIGNITIES. Where the testimony as to alleged indignities on the part of defendant, committed against defendant, is conflicting, the findings of the trial court will be deferred to and the divorce denied.

2. ———: ———: ACCUSATIONS OF INFIDELITY. Accusations of infidelity made by the husband against the wife without just ground, and which are untrue, undoubtedly constitute intolerable indignities within the meaning of the statute.

3. ———: DESERTION: HUSBAND ENTITLED TO A DIVORCE. A husband, who was partially paralyzed, but able to perform farm work, objected to his wife leaving home for other employment; desiring that she attend to her home duties and their child. He threatened, if she left, she should not return. Before her departure he had found fault with her frequent absences, and the degree of intimacy existing between her and a farm hand whom he discharged and threatened to kill. His suspicions, though untrue in fact, were warranted by the wife's indiscreet conduct. Actuated by regard for his child, he endeavored to induce her to return, but his efforts were contemptuously rejected. *Held*, that the wife's departure was unjustifiable, and, having continued for one year, entitled the husband to a divorce for desertion.

4. ———: CHILD AWARDED FATHER: MOTHER MAY VISIT IT. Where a divorce is granted the husband, and the proof shows that he is prepared to take care of his five-year-old child, with the aid of a widowed aunt who lives with him, who is a woman of tenderness, experience, and intelligence, and it appearing that the future welfare, maintenance, and education of the child will be promoted in the husband's custody, its custody will be awarded him, with reasonable rights of the wife to visit it.

Appeal from Louisiana Court of Common Pleas.—*Hon. D. H. Eby,* Judge.

REVERSED AND REMANDED *(with directions).*

*Pearson & Pearson* for defendant-appellant.

(1)   The plaintiff was not entitled to a decree of divorce because the evidence did not show that she was the innocent and injured party.   There was an abundance of evidence showing that her association, at various times and places, with one Neil Williams, was such as to at least give her a questionable reputation in the community in which she lived, and to create much unfavorable comment on her conduct.   This is sufficient to justify a court in refusing her a decree of divorce. Lawlor v. Lawlor, 76 Mo. App. 637.   (2)   The defendant should have been granted a divorce, on his cross-bill, because the plaintiff deserted him, and remained away from him for a period of more than one year continuously next preceding the filing of his cross-bill or the commencement of this action.   R. S. 1899, sec. 2921; Morris v. Morris, 60 Mo. App. 86; Ulrey v. Ulrey, 80 Mo. App. 49.

*Ball & Sparrow* for plaintiff-appellant.

The charge of infidelity by the husband against his wife, if untrue, is such an indignity as to warrant a decree of divorce in her favor.   Clinton v. Clinton, 60 Mo. App. 296.

REYBURN, J.—Plaintiff sued defendant for divorce, and defendant by cross-bill in turn asked the same relief.   Each charged the other with intolerable indignities, and after full hearing the trial court refused a divorce to either party, and awarded plaintiff temporary alimony at rate of $25 per month pending suit, and an allowance as attorney's fee and for suit money,

from which judgment and order defendant has appealed.

After an acquaintance of three months or less, the parties hereto were married, the ceremony being performed by plaintiff's father on the fifteenth day of April, 1897, and they lived together until the tenth day of September, 1901, one child, a boy now about five years of age being born of the marriage. Consequent on injuries sustained when nine years of age, defendant's lower limbs were paralyzed, and he was compelled to depend on his hands and arms for locomotion; but despite his crippled condition, he was able to perform much of the work of his occupation as a small farmer, could mount a horse from the ground and ride any kind of farming implement. During their married life defendant employed a farm hand when he could secure one, but from time to time when he was without such assistance, plaintiff worked faithfully and aided defendant on her part, helping to build fences, feeding and caring for the stock, shucking corn, hauling wood, harnessing teams and doing other work about the farm. Reserving the complaint that defendant had impugned plaintiff's character, which will be later considered, the graver charges made against her husband by the plaintiff consisted of harsh, cruel and wicked names applied to her, abuse in the presence of others to her shame and mortification, and striking her frequent blows with his fists, sticks of wood or any other articles convenient. The plaintiff testified in support of such allegations, but her testimony was unsupported, nor corroborated by other witnesses, and was negatived by the testimony of her husband denying any such gross misconduct or cruel maltreatment by him.

The court below, from the opportunities of the trial, was best qualified to pass upon and weigh such conflicting testimony, and its finding that the plaintiff failed to establish the causes of divorce will be deferred to, and the conclusion that the plaintiff did not offer

proof entitling her to a decree of divorce is adopted.

The cross-bill of defendant further charged desertion on the tenth of September, 1901. It appeared that plaintiff desired to accept employment at a powder mill two or three miles from their home, to which defendant objected as dangerous, also urging that it was her duty to remain at home to care for the child and perform her other domestic duties. He further warned and threatened that if in defiance of his wishes she carried out such purpose, she could not return, and her departure ensued. Before their separation he had found fault with her conduct in being frequently absent from home and in the degree of intimacy existing between her and a farm hand whom he discharged and threatened to kill because of his suspicions. The expression of doubt regarding the propriety of her actions in this regard was also advanced as further ground in support of her petition. Accusations of infidelity made by the husband against the wife without just ground and untrue are undoubtedly intolerable indignities comprehended within the meaning of the statute. Clinton v. Clinton, 50 Mo. App. 296; Lewis v. Lewis, 5 Mo. 278. But the demeanor of the plaintiff was not beyond criticism, and while we take this occasion to adopt and approve the finding of the trial court, that the testimony failed to disclose that her conduct justified the conclusions of her husband and went no farther than to establish indiscretions and acts provoking and stimulating gossip and scandalous insinuations by her acquaintances and neighbors, yet considered in the most lenient and charitable light, her behavior was well calculated to justify his remonstrances, and, when repeated, to arouse the impatience and indignation in which he was shown to have rudely and roughly indulged. In the face of the stern fact that his belief in her constancy to him had been shaken, by a succession of letters and personally on occasions of her visits to his house to see her child, a well as by the intermediation of a witness at the trial,

well acquainted with both, he had appealed to her and endeavored to effect a reconciliation, but all his efforts in that direction were contemptuously repulsed by his wife. He explained that for the sake of their child, to whom he appeared devotedly attached, he was willing to efface all that was past and to begin their married life anew.

The testimony is conclusive that in his afflicted state he was industrious, domestic in his habits, and provided as liberally for his family as their condition in life demanded and his moderate resources and impaired capabilities permitted. It may be admitted that defendant was shown to be easily aroused to anger and irascible, but the physical infirmities he was compelled to endure might well render his temperament more petulant than one not oppressed with such ailments. But his imperfections in this regard were apparent and their probable effect upon his disposition should have been weighed and considered before plaintiff entered upon their married life and accepted him for better or worse. The departure of plaintiff from her husband's roof was unjustifiable, and being continuous for one year without reasonable cause, entitled him to have the prayer of his petition granted.

The proof showed that the father was prepared to take charge of his child, through the care and with the aid of his mother's widowed sister, who had made her home with him since the absence of appellant and was shown to be a woman of tenderness, experience and intelligence, and the future welfare, maintenance and education of the child will be promoted and secured in the custody of the father.

The judgment will be reversed and the cause remanded with directions to the lower court to award the custody of the child to the defendant, with reasonable rights reserved to the plaintiff to visit it, and to enter a decree of divorce in favor of defendant, and annulling

and setting aside the order of temporary alimony, but affirming the allowance for attorney's fees made. Motley v. Motley, 93 Mo. App. 473; Steele v. Steele, 86 Mo. App. 224, and cases cited. *Bland, P. J.,* and *Goode, J.,* concur.