HENRY P. WEHRENBRECHT, Appellant, v. EMILIE WEHRENBRECHT, Respondent.

St. Louis Court of Appeals. Argued and Submitted October 8, 1918. Opinion Filed November 6, 1918.

1. **DIVORCE: Grounds: Evidence; Sufficiency.** In a divorce suit charging numerous indignities, rendering plaintiff's condition intolerable, evidence examined and *held*, that plaintiff made out a case entitling him to a divorce. ALLEN, J., dissents, not thinking plaintiff has shown himself to be the injured and innocent party.

2. ———: ———: **Injured Party: Recrimination.** Where the indignities of defendant were such as to render plaintiff's condition intolerable, he would, although he was not blameless, be the "in-

jured party," within section 2370, Revised Statutes 1909, and entitled to a divorce, where his conduct was not such, had defendant complained against the plaintiff, she seeking the divorce, either by direct suit, or by cross-bill, as would have entitled her to a divorce.·

3. ———: Appellate Practice: Review: Province of Appellate Court. While, in a divorce suit, the appellate court on appeal, will defer largely to the conclusion arrived at by the trial judge, it is not freed from the duty and the obligation of forming its own conclusion as to where the truth lies and where the merits of the particular controversy are to be found.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. William T. Jones.* Judge.

REVERSED AND REMANDED (*with directions.*)

*Douglas W. Robert* for appellant.

The plaintiff was entitled to a decree. Clark v. Clark, 143 Mo. App. 356; Slaughter v. Slaughter, 106 Mo. App. 104.

*Luke E. Hart* and *Richard C. Hart,* for respondent.

REYNOLDS, P. J.—Plaintiff brought his action against the defendant, his wife, for divorce. The parties were married in the city of St. Louis, December, 1886. The action was commenced in July, 1917.

After averring that during all the times mentioned in the petition plaintiff "faithfully demeaned himself and discharged all his duties as the husband of defendant, and at all times treated her with kindness and affection, but the said defendant, wholly disregarding her duties as the wife of the plaintiff, has offered plaintiff˙ such indignities as to render his condition intolerable, in this, to-wit," the petition charges numerous indignities. Summarizing them, they charge false accusations by defendant to other people of improper relations by plaintiff with married women; improper and immoral conduct in regard to his children, in exposing his person to and spying on his daughters; express-

ing the wish on many occasions that plaintiff had died instead of a son of theirs, who died when about 5 years of age; expressing a desire to kill plaintiff; that she would kill him sometime; that she had stated at many times that the family would be better off if plaintiff were dead; that she would not mourn if he were dead and that when he died she would warn their pastor not to say a good word for him at the funeral; accused him to members of their church of being a hypocrite; that defendant complained to and had him haled before the Assistant Circuit Attorney as a vagrant; had him tried upon a vagrancy charge, which she had lodged against him; that defendant continually nagged and scolded him in the presence of other people and of their children; ridiculed and belittled plaintiff before others, and continually complained about him to her own and plaintiff's friends and had told plaintiff many times in the presence of their children that she hated him and was sorry she had ever met him and would rather wash for a living than live with him; had told many people that she hated him; that she had lost all love for him and believed he was losing his reason; had told plaintiff in the presence of their children that nobody had any use for him; that everybody knew him and if it were not for him, she would have more friends; that she had no use for him except for the money she could get out of him; told plaintiff to give his money to his family and leave; that defendant had said to plaintiff that he (plaintiff) did not know whether the deceased son was his son or not; asserted that he had always hated their children and had never done anything for them; accused plaintiff of earning more money than he told her of and of using part of it to keep another woman; and of meanness to her and his family.

The petition continues with a number of other charges along this line. Averring the necessary jurisdiction of facts, plaintiff prays a decree of divorce.

It is set out in the petition that four children were born of the marriage, the eldest, a son, dying when about 5 years old.

The answer, beyond the admission of the marriage and the birth of the children, denies all the allegations of the petition and avers that plaintiff was not the injured and innocent party and was not entitled to a divorce.

There was a trial before the court, lasting parts of several days, and at its conclusion the court denied the petition of plaintiff and dismissed the case. Interposing a motion for new trial and excepting to its being overruled, plaintiff has appealed.

We have read all of the somewhat voluminous record of the testimony in this case and do not think that it would subserve any public interest to attempt to set it out in detail, or even to summarize all of it. It is sufficient to say of it that there was testimony on the part of plaintiff in support of many of the more serious allegations of indignities pleaded, these sustained not alone by the testimony of plaintiff himself but by that of other witnesses. In point of fact, a number of the charges were admitted by the defendant, or corroborated by the testimony of her own witnesses. Reading the whole testimony in the case and giving it the consideration we, as an appellate court, in a case of this kind, are bound to do, our conclusion is, that plaintiff made out a case entitling him to a decree. It appears that almost from the beginning of the marital life of these parties, there has been constant quarrelling and bickering, often brought on by one of the daughters, particularly, who seems on all occasions to have sided with her mother and has invariably taken her mother's view of the case as to the relations between them, apparently without any love or respect for her father. Defendant had plaintiff arrested as a vagrant. He was acquitted of that charge. The last time he left home his wife told him, in effect, never to return. In short, the testimony tends to show that the plaintiff, throughout practically the whole of their married life, has been subjected to what is commonly referred to as "nagging" on the part of his wife, usually over the most trivial, sometimes over serious matters of domestic polity.

She and her daughters, socially ambitious, complained of the neighborhood in which they lived, and were continually urging removal to other neighborhoods; when he left they did move into another locality.

The question then arises, was plaintiff debarred from relief because he was not an "innocent and injured party?" While plaintiff himself was not blameless in all these matters, the weight of the testimony, as it strikes us, is, that within the meaning of the law, he was the injured and innocent party.

It is rather curious that section 2370, Revised Statutes 1909, does not use the word "innocent," only providing that for any of the causes mentioned "the injured party" may obtain a divorce. In section 2372, providing for a cross-bill, as it is called, it is enacted that "if the court shall be satisfied that the defendant is the injured party, it shall enter judgment divorcing the defendant from the said plaintiff, as prayed in the answer." Nevertheless, it has always been assumed in 'our pleadings that an averment should, in effect, be made that plaintiff, or defendant, is both the innocent as well as the injured party, or words of similar import. As the chapter on divorce and alimony appears in the revision of 1845 (see p. 426, sec. 1), the language is: "The innocent and injured party may obtain a divorce from the bonds of matrimony." In the old case of Nagel v. Nagel, 12 Mo. 53, these words are referred to as necessary under the law as it stood in 1845. The words "innocent and" were left out of the revision of 1855 (as see, 1 Revised Statutes 1855, p. 662, sec. 1), as they had previously been left out in the Act of March 12, 1849 (see Laws 1849, p. 49, sec. 1), which amended the chapter concerning divorce as it stood in the revision of 1845, and so they have remained to the present day. Referring to this omission, Judge Bliss, speaking for our Supreme Court, said, in Hoffman v. Hoffman, 43 Mo. 547, l. c. 549, that it was not clear why the word "innocent" had been left out, "unless regarded as superfluous, or—more likely—to conform to section 3 (chap. 114, p. 561, Revised Statutes 1865, which

is now section 2370, Revised Statutes 1909), where a divorce is provided for the defendant if the court shall find that he or she is 'the injured party.' '' It is further held in Hoffman v. Hoffman, supra. that the statute should receive the same construction in this respect as before the change; that at least no better character should be required of a party seeking a divorce, ''and we are not inclined to allow it to a person sustaining a worse one.'' Says Judge BLISS, in the above case, ''The least that can be required, if we would make the provisions of the statute harmonize with the principles of the law in other respects, would be to compel parties to come into court with hands so far clean, at least, that the opposite party is not entitled to the same redress from them. If both parties have a right to divorce, neither party has. The court must discriminate between them; must say which is the injured party, and which is entitled to relief. Neither the legal inference can be drawn as to both, nor the remedy applied to both.'' Discussing the necessary facts to maintain a decree for either party, Judge BLISS says in the above case (l. c. 551), and referring to the rule requiring the court to look into the conduct of both husband and wife, ''This rule does not apply to conduct. Lowever reprehensible, that would not entitle the other party to a divorce. His or her conduct must come within some of the cases enumerated in the statute. We are strongly of the impression, from the examination of the record, that the circuit court must have extended the rule too far; that, finding as it reasonably might that the defendant had been guilty of improper conduct, that she indulged in outbursts of temper, was a scold, etc., she was not considered 'the injured party,' although her conduct was not bad enough to entitle him to a divorce. If she had absented herself from him without reasonable cause for the space of one year, or if she offered such indignities to him as rendered his position intolerable, then her conduct was a clear offset, so to speak, to his; she is not the 'injured party,' even though she made the case against him.'' The result was

that the Supreme Court remanded the cause for a new trial. This case of Hoffman v. Hoffman is referred to by Judge ROMBAUER, speaking for our court in Owen v. Owen, 48 Mo. App. 208, as the "last direct and controlling decision of the Supreme Court on that subject," and one which our court is bound to follow. So it has always been held that it must appear that one seeking divorce must appear to be the innocent and injured party. See, for example, Morrison v. Morrison, 62 Mo. App. 299; Lawlor v. Lawlor, 76 Mo. App. 637. Plaintiff's account of his own good conduct practically meets this.

Applying this test to the testimony introduced in behalf of defendant under her answer, which was a general denial and not a cross-bill asking affirmative relief, are the acts so testified to sufficient to show that the plaintiff was not the "injured and innocent party" or, to put it in the language of the present statute, was not the "injured party," or, adopting, in substance, his own averment, was he an affectionate husband and had he discharged his duty as a husband?

We have concluded, on a very careful examination and reading of the whole testimony in the case, introduced by both parties, that the evidence tends to show that he did, and that the acts relied upon by the defendant as showing the misfeasance of the plaintiff were either not proven or, almost without exception, brought on by her own conduct. As we read the testimony in the case, from almost the beginning of the marital relations the defendant here presisted in what is commonly called "nagging" the plaintiff. She admits that she no longer loved him. There was testimony from several witnesses to the effect that she had stated to him and to others that she hated him. She did not even specifically deny this; the most she said was that she did not remember having used that expression. She charges her husband with assaulting her. We do not think this is proved by any satisfactory evidence. Nor is her charge that he applied vile names to her proven. He did, in the course of their quarrels, swear at her, but it does not appear that he was the one at

fault in these quarrels. The charge that he unduly exposed himself, is not only not proved, but disproved. That she was guilty of a great number of the acts charged against her by the plaintiff, seems to us very clear. If she had complained against the plaintiff, she seeking the divorce, either by direct suit, or by a cross-bill, we could not say that she was entitled to a decree. [Hoffman v. Hoffman, supra.]

It is true that in cases of this kind we defer largely to the conclusion of the trial judge, who has the very great advantage of having the witnesses before him, of seeing and hearing them and passing on their credibility from their actions on the stand, from their manner of giving their testimony, and in other respects an advantage in arriving at the truth that is denied us. Notwithstanding that, the law places upon us the duty of passing and determining upon a case of this character on our own judgment, and while we are to, and always do, defer in large measure to the conclusion arrived at by the trial court, we are not freed from the duty and the obligation of forming our own conclusion as to where the truth lies and where the merits of a particular controversy are to be found. This is the settled law of our State, as for example see Ashburn v. Ashburn, 101 Mo. App. 365, 74 S. W. 394; Booth v. Scott et al., —— Mo. ——, 205 S. W. 633.

In an action of this kind there are always three parties, that is to say, the husband, the wife and the public—the State. Very often the interests of fourth parties, that is, the children, are to be considered. That feature, however, fortunately, does not arise here There are two daughters, one of them 22 years of age, at the time of the trial, the other somewhat older and married, and a son 15 years old at the time of the trial, who for a number of years has worked and, as the evidence shows, turns his wages over to his mother, with the consent of the father, so that we have here the plaintiff, the defendant, and the public to consider; and we think that the interest of the public will be best served by dissolving the marital relations of the parties. We see

no probability of their ever living together in harmony as husband and wife. If the bond of marriage is not legally broken, judging by the past, there will be endless bickerings; probably questions of proper contribution by the husband to the support of the wife, resulting in appeals to the criminal courts. The husband is shown to be a man of good habits and small means, undoubtedly irascible, but of good character. Finding him the "injured and innocent party," as that is defined by the law, we think him entitled to a decree of divorce.

Our conclusion upon reading all of the testimony in the 'case is that the learned trial judge was in error in refusing a decree to plaintiff and in dismissing his suit.

It follows that the judgment of the circuit court cannot stand. That judgment is reversed and the cause remanded with directions to the circuit court to enter up a decree in favor of the plaintiff as of the date of the rendition of the decree in this case. The costs in this court, as well as in the circuit court, should be and are adjudged against the plaintiff.

*Becker, J.*, concurs. *Allen, J.*, dissents, not thinking plaintiff has shown himself to be the injured and innocent party.