# W. A. JONES, Respondent, v. LUPHEMIA JONES, Appellant.

### Springfield Court of Appeals, December 5, 1921.

1. **DIVORCE:** Appellate Court Defers to Opinion of Trial Court in Divorce Action. On questions of fact in a divorce case, the appellate court will defer largely to the finding of the trial court, but will not be bound by it, and if, on a review of the testimony, a different conclusion is reached, the judgment of the appellate court will follow its own finding.

2. ———: Granted Only to ''Innocent and Injured Party.'' The statute requires that plaintiff be shown to be an innocent and injured party before any decree for divorce can be granted; and in determining who is an innocent and injured party courts are to be guided by the standard provided by the Legislature in specifying grounds upon which a divorce may be granted; that is, his conduct should be shown not to be such as would make out a prima-facie case of divorce against him by the other party to make him an "innocent and injured party."

3. ———: Decree Denying Divorce Res Judicata as to All Facts Known at the Time. A decree denying a divorce was *res judicata* as to all facts known to the plaintiff at the time, and he could not use in a subsequent action any fact that he might have used in the former trial.

4. ———: Cohabitation a Condonation of Improper Conduct of Wife. A husband who lived with wife for many years after she was guilty of improper conduct with another, with knowledge thereof, condoned the same, and was not entitled to a divorce therefor.

5. ———: Allegation of Condoned Conduct Held to Constitute Indignity. Allegation in pleading in divorce action as to improper conduct on the part of defendant wife, which had been condoned by many years' cohabitation, with knowledge thereof, constituted an indignity against the wife, which rendered plaintiff other than an "injured and innocent party," and not entitled to a divorce. especially as the conduct of the defendant relied on for divorce was provoked by wrongful conduct of plaintiff in courting another woman, and seeking a legal separation in order to marry the other woman.

Appeal from Circuit Court of Wright County.—*Hon.*
*C. H. Skinker,* Judge.

REVERSED AND REMANDED (*with directions*).

*C. W. Evans* and *Lamar, Lamar & Lamar* for appellant.

(1)   There is matter of public policy involved in
every divorce action.   The marriage relation is the
foundation of civil society and the public has an interest
therein, and its rights are always before the court to
be considered in an application for divorce.   The public
lic is an interested third party in every such case.
Moore v. Moore, 41 Mo. App. 176, 184; McMakin v. Mc-
Makin, 68 Mo. App. 57, 62-63.   (2)   In a divorce action
the appellate court will examine the evidence and pass
upon its weight and render such decree, or direct the
trial court to render such decree as the appellate court,
after reviewing all the evidence, finds should be ren-
dered.   Grove v. Grove, 79 Mo. App. 142; Griesedeck
v. Griesedieck, 56 Mo. App. 94; Thurman v. Thurman,
186 S. W. 1.   It is true, the books lay down the rule
that the appellate court will in such cases defer to the
finding of the trial court, but it will be found upon an
examination of the books that this is based on the rea-
son that the trial court has seen the witnesses and ob-
served their demeanor on the stand, and is therefore in
a better position to judge of their credibility.   In cases
like the case at bar, where the salient, outstanding facts
are undisputed, and are a matter of record, then this
court is in just as good a position to pass upon the right
of the matter as the trial court, because it becomes
a matter of law as to whether or not plaintiff is en-
titled to a divorce under the admitted facts.   Tarlotting
v. Tarlotting, 82 Mo. App. 200.   (3)   The judgment
denying to plaintiff a divorce in the first action, and
finding the wife in the maintenance suit to be the in-
nocent and injured party, and that the husband had

abandoned and refused to support her, were *res adjudicata* as to all acts of the wife prior thereto of which the husband had knowledge, and could have offered evidence or did offer evidence, and will bar a subsequent action for divorce based upon the same charges. Searcy v. Searcy, 196 Mo. App. 311, 314, and cases cited the court says: "Good faith and justice relett, 113 Mass. 312. In the Massachusetts case above cited the court says: "Good faith and injustice required the husband, if he intended at any future time to rely on the graver charge, to suggest the fact before his first libel was dismissed, so that the court might, if thought consistent with the interests of the parties and of the public, order the dismissal to be without prejudice to a subsequent libel, and the libellee might take measure to preserve any evidence material to her defense. The husband, not having done this, or shown any reason for not doing it, must be deemed to have waived any right to a divorce depending exclusively upon facts existing and known to him at the time of his first application to the court." (4) In order to be entitled to a divorce the plaintiff must establish that he is both the innocent and injured party. Lawler v. Lawler, 76 Mo. 637, 642; Morrison v. Morrison, 62 Mo. App. 299; Wehrenbreckt v. Wehrenbreckt, 207 S. W. 290, 292; Nolker v. Nolker, 208 S. W. 129.

*N. J. Craig* and *A. M. Curtis* for respondent.

(1) While the appellate court has full power in a divorce action to weigh the evidence and to disturb the judgment of the trial court on the question of weight of the evidence and to make such judgment as it may see fit, yet it has long been held that great deference will be shown to the findings of the trial court on disputed matters as he has the parties before him and is in better position to judge of the credibility of the parties. Milster v. Milster, 200 Mo. App. 605; Wald v. Wald, 119 Mo. App. 341; Penningroth v. Penning-

roth, 72 Mo. App. 322; Yeager v. Yeager, 185 S. W. 743; Hodgsett v. Hodgsett, 186 S. W. 1171. (2) The indignity charged in plaintiff's petition and proven in evidence is a sufficient ground for divorce. Friedmeyer v. Friedmeyer, 194 S. W. 746; Lewis v. Lewis, 5 Mo. 278; Slaughter v. Slaughter, 106 Mo. App. 104. (3) A judgment against petitioner for divorce upon certain grounds contained in the petition is not a bar to a subsequent action based upon entirely different grounds. It is generally true that all grounds existing at the time of the first action must be included in it, but if there were grounds then existing that were unknown at the time to plaintiff, but were later discovered, the first action would not be a bar to an action upon the cause later discovered. Sutermeister v. Sutermeister, 209 S. W. 955; Mullen v. Mullen, 195 S. W. 544; Dwyer v. Dwyer, 26 Mo. App. 647; Louis v. Louis, 134 Mo. App. 566; Searcy v. Searcy, 196 Mo. App. 311. (4) The court of common pleas of Cape Girardeau county had jurisdiction of the divorce action brought by plaintiff even though he was a resident of Wright County, Missouri, and plaintiff had a legal right to bring the action there and the fact that he did so does not destroy his right to a divorce in the present action, sufficient grounds having been proven. The fact that he afterwards married upon the strength of the divorce decree made by said court was not wrongful, if in good faith. Lagerholm v. Lagerholm, 133 Mo. App. 306; Gant v. Gant, 49 Mo. App. 3; Werz v. Werz, 11 Mo. App. 26; McGee, 161 Mo. App. 40.

COX, P. J.—Action for divorce. Decree for respondent, plaintiff below, and defendant appealed.

It is well settled in this State that on questions of fact in a divorce case the appellate court will defer largely to the finding of the trial court but will not be bound by it and if on a review of the testimony, a different conclusion is reached, the judgment of the appellate court will follow its own finding.

We have carefully examined this entire record which is very lengthy and have reached the conclusion that the plaintiff made a case for divorce by proof of statements made by defendant about him in conversation and by letters unless it shall further appear that he is not the innocent and injured party within the meaning of the statute and cannot secure a divorce for that reason.

The petition alleged indignities. The answer denied these charges and pleaded *res adjudicata* in a former suit between the same parties and a further allegation that plaintiff had married, lived and cohabited with another woman since the former trial. Plaintiff replied admitting the marriage to another woman and alleged that prior to doing so, he had secured a divorce from defendant in Cape Girardeau County. That that decree was afterwards set aside and he had not lived with that wife since. That he then brought suit in Wright County and had that marriage annulled.

The history of this matter is as follows: Plaintiff filed a suit for divorce against defendant in Wright County where he then lived and now lives, and alleged only desertion. Defendant answered, admitting the marriage to plaintiff but denying the charge of desertion. Defendant also filed a suit against plaintiff for maintenance, returnable to the same term. The two cases were consolidated for trial and the evidence covered the entire marital life of these parties to the date of the trial which was in December, 1917. The court dismissed plaintiff's bill in the divorce case and found for the wife in the maintenance suit and gave judgment in her favor in that suit. Neither party appealed and those judgments became final. Plaintiff then lived in Wright County and has continued to live there ever since. In June, 1918, plaintiff filed another petition for divorce from defendant in Cape Girardeau County alleging indignities and also alleging that defendant was a non-resident of the State and secured service by publication. Defendant knew nothing of that suit being filed and plaintiff obtained a decree by default on July

25, 1918.   On August 26, following, plaintiff married one Florence E. Weed.   Later defendant learned of the default decree in Cape Girardeau County and brought suit in that county to set the same aside alleging that she was a resident of this State when that suit was brought and plaintiff was not a resident of Cape Girardeau County but was a resident of Wright County. This case was heard in December, 1919, and the divorce decree set aside.   At that hearing, it appeared that plaintiff had never resided in Cape Girardeau County but was at all times a resident of Wright County. Whether or not the wife was a non-resident of Missouri when that suit was filed was also involved but whether the decree was set aside because the court found she was a resident of Missouri or because her husband was not a resident of Cape Girardeau County does not appear.   Plaintiff then brought suit in Wright County and had his marriage with Mrs. Weed annulled and then filed this suit in Wright County which resulted in a decree going in his favor.

As already suggested, the question for us to determine is whether or not the plaintiff is an innocent and injured party.   The statute requires that to be shown before any decree for divorce can be granted.   It is intended by this provision of the statute to protect the public interest by refusing to divorce husband and wife when it appears that the party applying for the divorce is unworthy and by reason of that fact it is often said that in divorce proceedings there are three parties, the public constituting the third party.   The theory of the law is that the marriage relation should be held sacred and that the public good will be best subserved by refusing a divorce unless the party applying therefor can show not only that the other party has violated the marital obligations but also that he has not violated them.   What will constitute a party "an innocent and injured party" should not be left absolutely to the individual judgment of the trial judge in each particular case but there should be some rule of law by which

a party's conduct should be measured in determining that question. We do not understand that to constitute a party in a divorce proceeding "an innocent and injured party" the court must find that his conduct as a citizen and toward the other party has been at all times exemplary and above all reproach but he must at least show that he has not been guilty of any conduct which under the law would make out a *prima-facie* case for divorce against him by the other party. The Legislature has provided the grounds upon which a divorce may be granted and by doing so has said that unless one or more of these grounds is found to exist, a divorce should not be granted and that fixes the standard by which courts are to be guided in granting or refusing divorces. We think the same standard is to be the guide in passing on the question of whether the party asking the divorce is an innocent and injured party. [Hoffman v. Hoffman, 43 Mo. 547; Gruner v. Gruner, 183 Mo. App. 157, 177, 165 S. W. 865; Milster v. Milster, 200 Mo. App. 603, 606, 209 S. W. 620; Nolker v. Nolker, 20 S. W. 128.]

The transcript of the evidence taken in the divorce and maintenance trials in December, 1917, and at the trial to set aside the default decree rendered in Cape Girardeau County was by consent of the parties read in evidence in this case. Reviewing the facts as shown by these transcripts and the evidence produced at this trial as applied to plaintiff's conduct, we find that these parties were married June 16, 1885, at which time the plaintiff was 27 years of age and the defendant 16. They lived together until December, 1908, a period of 23 years and six months. Four children were born of this marriage, one boy and three girls, all of whom were grown. Two of the girls are married. The son is located in Ohio and the oldest daughter has remained at home. It appears that the mother, this defendant, and the oldest daughter did not get along well together and in December, 1908, the defendant left. We find that the real cause of her leaving was the trouble between

her and this daughter and not trouble between her and her husband. In any event, the circuit court of Wright County, in December, 1917, after a contested trial, gave defendant a judgment against plaintiff for maintenance and that has settled in her favor the question of her justification for leaving and remaining away. After she left she and her husband kept up a friendly correspondence and he paid a number of visits to his wife at all of which visits they occupied the relation of man and wife and cohabited together. This continued until about a year and a half before the first divorce suit was tried. His visits to his wife and his cohabitation with her ceased about the time his courtship of Mrs. Weed began and a short time after this courtship began, he ceased writing to his wife. Plaintiff testified on cross-examination in the trial of the divorce case in December, 1917, that for a year and a half prior thereto, he had visited Mrs. Weed as a suitor an average of once a week and when asked if it were not his intention to marry Mrs. Weed if he secured a divorce from defendant, he answered "That would be my business." He also testified that the divorce proceeding did not occur to him until after he began courting Mrs. Weed. It is clear to us that his real purpose in trying to secure a divorce from defendant was to enable him to marry Mrs. Weed and not because he thought he was entitled to it under the law. Having failed to secure a divorce at that time, he in six months thereafter, filed another suit in a distant county of the State, secured a default decree on service by publication and married Mrs. Weed in a month thereafter. He attempts to explain why the next suit was filed in Cape Girardeau County by saying that his children objected to the notoriety of a divorce trial in the county where he lived. Then why did he bring his first suit there? He now says that he told his attorneys at the time that he lived in Wright County and that at the trial in Cape Girardeau County, he told the judge of the court the same thing and that the judge said that it would make no difference as the case could be

tried in any county in the State. It is unreasonable to suppose that a judge of a court would make such a statement in an *ex parte* case where service had been obtained by publication when the statute specifically requires that actions for divorce be brought in the county where the plaintiff resides. We are not disposed to look with much favor on that part of the plaintiff's testimony. Service was held in that case by publication and he contends that he then believed that defendant was a resident of the State of Illinois. He also says that he was receiving letters from his wife at that time but that he destroyed them without opening or reading them. His wife was also writing to the children and there is no question but that he could have learned just where she was and could have notified her of the pendency of the suit in Cape Girardeau County had he wished to do so. There is nothing to show that his wife had offered any new indignities to him between the time of the trial in Wright County in December, 1917, when a divorce was denied him and the time of filing the suit in Cape Girardeau County and he could not use in Cape Girardeau County any fact that he might have used in a former trial in Wright County because a divorce had been denied him in that trial and that judgment was *res adjudicata* as to all facts known to him at that time. Our conclusion is that whether he informed his attorneys and the court at Cape Girardeau that he was a resident of Wright County or not, his real purpose in bringing the suit there was to get away from the court and the county of his residence and conceal the proceeding from his wife and prevent her from making a defense.

In his petition filed in Cape Girardeau County, plaintiff alleged that defendant had admitted to him that she had been too intimate with another man. The facts as to that matter as developed at the other trial were that there was some conduct on her part that was improper but as explained by her was not criminal in any sense and that it occurred a long time ago and was known to plaintiff soon after it occurred and was never repeated. They

lived together for many years thereafter and two children were born to them after that occurrence. If her conduct on that occasion had been as criminal as plaintiff contended he had fully condoned it and ought not to have mentioned it in his petition for divorce filed long afterward and we think his doing so was, under the circumstances, an indignity against his wife.

Our conclusion after a careful examination of the whole record is that the separation of defendant from her husband and their living apart from each other from 1908 until plaintiff became enamored with Mrs. Weed was with his consent as shown by the fact that during all this time a friendly correspondence was kept up between them and he visited his wife and cohabited with her at intervals during this period. Had not Mrs. Weed or some other woman crossed the path of plaintiff, there would have been no divorce proceeding and no occasion for defendant to have made the statements about the plaintiff in conversation and by letter that she did make and which constituted the only ground upon which the decree could be upheld. This conduct on the part of defendant was provoked by the wrongful conduct of plaintiff in courting another woman and by his seeking a legal separation from his wife in order to marry the other woman. While her conduct, notwithstanding the great provocation, might prevent her securing a divorce from plaintiff, we also think that his conduct shows that he is not an innocent and injured party within the meaning of the statute and for that reason he cannot secure a divorce from her.

Judgment reversed and cause remanded with directions to dismiss appellant's bill and render judgment against him for costs.

*Farrington, J.,* and *Bradley, J.,* concur.