BERTHA TEBBE, APPELLANT, RESPONDENT, v. FREDERICK TEBBE, RESPONDENT, APPELLANT.—21 S. W. (2d) 915.

St. Louis Court of Appeals. Opinion filed November 5, 1929.

*Corpus Juris-Cyc References: Divorce, 19CJ, section 149, p. 73, n. 43; section 150, p. 73, n. 45; section 220, p. 94, n. 82; section 367, p. 143, n. 53; section 473, p. 192, n. 9.

*H. A. Loevy* for appellant, respondent.

1108

*Leahy, Saunders & Walther* for respondent, appellant.

BENNICK, C.—This is an action for divorce, which was tried upon the petition of plaintiff, the wife, and the answer and cross-bill of defendant, the husband. Each party counted upon alleged indignities of various kinds and character, the nature and purport of which will fully appear from our subsequent statement of the evidence adduced. At the conclusion of the hearing, the lower court dismissed both the petition and the cross-bill, from which judgment the parties perfected their separate appeals, which have been duly consolidated as one cause in this court.

We find in the respective briefs the usual assignments of error for a case of this character, which, while they are required by the rules of appellate practice, are yet of no vital significance, since the hearing is *de novo*. with the duty resting upon us to make our own finding of facts and arrive at our own conclusions, subject only to such deference to the lower court's decision as the exigencies of the particular case may seem to warrant.

Plaintiff, the wife, is now about forty-eight, and defendant, the husband, about sixty-five years of age. The marriage occurred on December 16, 1925, in the city of St. Louis; there was a first separation on March 1, 1926, which seems to have continued for four months; and the final separation took place on September 20, 1926, following which the instant suit for divorce was instituted by plaintiff on November 4, 1926. During the period of the first separation, plaintiff had also filed a petition for divorce. which was dismissed by her on June 15, 1926, pending the resumption of marital relations.

Plaintiff had formerly been married to one Edwards, from whom she was divorced some six years prior to her marriage to defendant. Of this union a daughter, Geneva, was born, who had reached maturity before her mother's second marriage, and at all times maintained a residence for herself independent of the one which plaintiff acquired. Defendant had also been previously married, his wife having died twelve years before he made the acquaintance of plaintiff. Of this marriage there were six children surviving, consisting of two sons and four daughters. The two sons and two of the daughters were married and living to themselves, while the remaining two daughters, Norma, about twenty years of age, and Elsie, about twenty-seven, were yet single, and made their home with their father. Norma was employed in some capacity by a downtown industrial concern, but Elsie was feeble-minded, and was totally dependent upon her father for support. Plaintiff had originally come from Coffeen, Illinois,

where her father, J. I. Scherer, was the village blacksmith, while defendant, on the other hand, had immigrated to this country from Germany when he was but a lad of eighteen years, and had thereafter engaged in business as a truck gardener until the declining years of his life, when he sold his land, and had retired to the enjoyment of his home at 5548 Emerson avenue, in the city of St. Louis, where he was living when his acquaintance with plaintiff was formed.

After her divorce from Edwards, it appears that plaintiff had been employed from time to time as a seamstress, and as a saleswoman in a department store, but in July, 1925, she was engaged as a hosiery solicitor in a house to house canvass in the neighborhood of defendant's Emerson avenue address. Coming to defendant's home in the course of her calls, she found him sitting on his front porch, and a conversation at once ensued between the two which revealed to plaintiff that defendant was a lonely widower, possessed of an automobile but with no one to ride with him, and to defendant that plaintiff was a divorcee, residing with her daughter at an address on Cabanne avenue, where she assured him that a number of widows were always to be found. Not only did she prevail upon defendant to buy six pairs of hose as the immediate fruits of her salesmanship, but she further invited him to call at her boarding house, which invitation he readily accepted, and as the final consequence of which the marriage ceremony was performed.

The burden of plaintiff's complaint was centered around the presence of defendant's daughters, Norma and Elsie, in the home; her husband's neglect and abuse of her; the slovenly habits which he continuously manifested after their marriage; and the fondness he displayed for the wife of an old friend of his upon such occasions as the two were afforded an opportunity to be together.

Perhaps the chief difficulty between the parties, under plaintiff's version of what transpired, arose from the fact that defendant insisted on keeping his daughter Elsie as a member of the household. Plaintiff would have us believe that Elsie was a maniac of homicidal tendencies; that her own life was constantly in danger at Elsie's hands; and that defendant was able to control and subdue his daughter only by the force of his own strength, which was but little superior to that which his daughter possessed. Plaintiff testified to an incident which occurred about March 1, 1926, shortly before the time she first separated from defendant, when the latter engaged in a rough and tumble fight with his daughter, culminating in Elsie's taking hold of a sharp knife and threatening to kill plaintiff unless she immediately left the house. Defendant's story of the occurrence was that he merely attempted to push Elsie into an adjoining room, in consequence of which she slipped upon a linoleum rug and fell, and that she had no knife, and made none of the threats of which plaintiff accused her.

Aside from the testimony of a number of disinterested witnesses, such as neighbors and acquaintances of Elsie from childhood, that she was only feeble-minded, and in nowise a dangerous person, the facts and circumstances in evidence sadly discountenance the force of plaintiff's own testimony. Elsie had always lived in her father's home; she assisted in part with the housework; she and her sister Norma roomed together; she cared for the children of a married sister; she went about over the city wholly unattended; and she was even put upon the stand as a witness in the case. The record clearly bespeaks the fact that plaintiff wanted to be rid of Elsie; but she had seen her on several occasions before the marriage, and had been fully advised of her deficiencies, and did not enter into the compact under any misapprehension as to the facts. Defendant, on the other hand, had promised Elsie's mother on her deathbed that he would always care for the child, and his sense of duty and nobleness of character is amply shown by his insistent refusal to deny to his helpless daughter a haven in the only home she had ever known. We are fully convinced, therefore, that plaintiff's charge with reference to Elsie's habits and tendencies was grossly exaggerated, and utterly disproved by the vast preponderance of the credible evidence in the case.

The same may be said as to the relations which plaintiff bore with Norma. It may well be that a daughter of Norma's age was somewhat resentful of a stepmother in the home, especially when the stepmother displayed such violent dislike for her feeble-minded sister, but the weight of the evidence does not bear out plaintiff's own testimony as to the constant insults, abuses, and illtreatment which she claims to have received at Norma's hands. To the contrary, Norma concededly lent her efforts to further the marriage between plaintiff and her father, although at first she seems to have opposed it, and so far as defendant's preference for Norma's wishes over those of his wife was concerned, it was shown that he at least compelled Norma to pay board out of her earnings, and thus contribute her part to the expenses of the home. The improbability of plaintiff's charge is well illustrated by what might be termed the wallpaper incident. She testified at length, and sought to make much capital of the fact, that when the paperhanger brought his book of samples to the house for selections to be made, she herself was relegated to the background, while Norma was asked by her father to choose the paper which should be used. Not only did Norma and defendant both deny that any such treatment was accorded plaintiff on that occasion, but the paperhanger himself testified in disinterested fashion that she refused to take any part in making the selections, and withdrew to a rear room while he was there, much to defendant's embarrassment and chagrin.

We need not discuss in great detail the charge which is made that defendant abused her, and neglected to provide her with sufficient food and clothing. Much of her testimony on direct examination as to these matters was materially contradicted and weakened by her admissions on cross-examination. Suffice it to say that canceled checks were introduced in evidence which disclosed that defendant had been by no means niggardly in the purchase of articles for his wife's personal use, and that the neighborhood grocer and baker testified that defendant gave plaintiff unlimited accounts with them, and promptly paid all bills which she incurred. She also complained about the furnishings of the home, but the record is replete with evidence that the furnishings were fully compatible with the social *status* of the family, as well as with what she herself had been accustomed to enjoy in the preceding period of her life.

A further alleged indignity which plaintiff sought to rely upon was the fact that defendant, who had been immaculate in his dress throughout their courtship, changed over night into a man of slovenly and indifferent habits. She complained, as also did her daughter, that his shirts were sometimes soiled; that he often wore no collar or tie; that he worked about the yard in his undershirt, and that such garments had long sleeves; that he perspired freely at his work; that he sometimes put in his own coal; and that he was once seen collecting manure in the street for use as fertilizer in one of his flower beds. The mere statement of the matters complained of is enough to disprove that they could have been indignities so as to constitute grounds for divorce. Even if defendant dressed in the very manner which plaintiff indicated, there was nothing about such habits or characteristics which did not accord with his *status* as a retired gardener, and besides the neighbors testified without exception that they had observed his mannerisms about the premises, and that his appearance was always as neat and clean as that of the other men throughout the neighborhood.

Finally plaintiff complained of her husband's relationship with the wife of one of his friends, but we think this charge entirely fell by the wayside. Plaintiff's own testimony discloses that if she ever entertained such views about his conduct, they were founded on suspicion, and not on fact; and indeed, we gather from the brief and argument of her counsel that the claim is not of any act of impropriety, but only of an attentiveness which plaintiff regarded as more marked than the obligations of mere friendship required. As illustrative of the lack of foundation for her complaint, we refer to her testimony regarding the presence of the woman's photograph in their home, although it was shown in the further course of her own examination that the picture had been given to her, and not to defendant, if indeed she had not procured it herself despite the other woman's protest.

We are fully convinced from the whole record that plaintiff is not entitled to a decree in her favor. To constitute indignities within the meaning of the statute, the acts relied upon should amount to a species of mental cruelty, and should establish a course of conduct by one spouse toward the other whereby the other's condition is rendered intolerable through repeated acts of such character and frequency as to be subversive of the family relation. [Bassett v. Bassett (Mo. Sup.), 280 S. W. 430; Becherer v. Becherer (Mo. App.), 299 S. W. 61; Bedal v. Bedal (Mo. App.), 2 S. W. (2d) 180; Gibson v. Gibson (Mo. App.), 16 S. W. (2d) 646.]

Even in those respects in which any of the allegations in her petition might be said to have received support from the weight of the credible evidence, the case falls far short of bringing plaintiff within the scope and purview of the above rule. As a matter of fact, the greater part of her own testimony, as well as the corroborative evidence of certain of her relatives, was steeped with such bias and exaggeration as to render any of her evidence hardly worthy of belief. We agree with the conclusion reached by the lower court, therefore, that the relief she asks should be denied, and that her petition should be dismissed.

Turning now to the allegations set up in defendant's cross-bill, we find that he predicated his right to a divorce upon the charge that plaintiff had a high, violent, and ungovernable temper, and frequently without cause flew into fits of rage, and called him by humiliating names; that she criticized his relatives and their appearance to his humiliation and chagrin; that she frequently told him she did not love him, and that she should have married a younger man; that she married him for the sole purpose of obtaining control and possession of his money and property for herself and her daughter, irrespective of his rights thereto and his obligations to his children; that she refused to go to places suggested by him, but instead went alone to places of her own choosing, and refused to account to him for her whereabouts; and that she falsely and without cause accused him of improper association with another woman, with the intent of disrupting the friendship existing between himself and said woman's husband.

Not only did defendant offer abundant and plausible testimony in support of the above allegations, but the attitude and admissions of plaintiff, and the independent facts and circumstances in evidence, also tended most strongly to bear them out. There seems to be no doubt about the fact that she was critical of his German accent, and was dissatisfied with his personal appearance. We have already indicated that she was continually nagging him about the presence of Elsie in the house, even to the point that he sent the latter away to live with one of his married daughters upon the occasion of plaintiff's

return after the first separation. She admitted that she frequently refused to accompany him to social gatherings at the homes of friends of his, although he seems to have been willing enough on many occasions to visit with her at the home of her parents in Illinois, and to assist her daughter, Geneva, in such matters as were within his power.

A matter of further consequence, in so far as it supplies the reason for the course taken in plaintiff's subsequent conduct, is the fact that she seems to have married defendant only for mercenary motives, and not because of any love or affection she had for him. Conceding that the motive itself, however selfish and improper it may have been, is not a ground for divorce, yet it is not without its significance as it tends to throw light upon the vital question of whether plaintiff was remiss in the discharge of her marital obligations. The testimony discloses, not only that plaintiff was the proponent of and the aggressor in the matrimonial venture, but also that she was continuously insistent throughout their cohabitation together that he transfer his property over to her. In conversations with defendant's friends and neighbors, her principal inquiry was always in regard to what they knew of his financial standing, and all her relatives seem to have pressed him very fully upon the same question on every possible occasion. Her chief solicitude was that he should spend his money freely, and not save any of it for his children to share. In fact, throughout plaintiff's own petition and testimony, the constant and repeated reference to financial matters crops out at every conceivable angle; and we cannot escape the conclusion that it was not defendant's penury or stinginess, but rather plaintiff's inordinate but somewhat thwarted desire to obtain possession of his property, which was the moving cause for their final separation.

Such frequent and repeated acts and conduct, we think, were sufficient to render defendant's condition in life intolerable, and to entitle him to have a decree at our hands. We are aware that the lower court not only found against plaintiff, but also against defendant; but while we entertain the highest respect for such court's decision, the obligation of due deference does not permit us to yield our own firm convictions because another tribunal possessed of an equal sense of justice may have found differently upon the same facts. It must be borne in mind that even though defendant may have been guilty of some misconduct, as the lower court evidently thought he was, the same will yet not prevent him from being an innocent party, unless his misconduct was so great as to entitle the other party to a divorce, which the lower court held was not the situation, and in which view we fully concur. [Rankin v. Rankin (Mo. App.), 17 S. W. (2d) 381; Jones v. Jones, 208 Mo. App. 632, 235 S. W. 481; Wehrenbrecht v. Wehrenbrecht, 200 Mo. App. 452, 207 S. W. 290.]

Error has also been assigned to the court's action with reference to the admission or exclusion of isolated bits of evidence. Suffice it to

say that we have examined the matters complained of, and find nothing which might fairly be said to have affected the final outcome of the case.

Accordingly, the Commissioner recommends that the judgment of the lower court, so far as it orders the dismissal of plaintiff's petition, be affirmed; that so far as it orders the dismissal of defendant's cross-bill, it be reversed, and the cause remanded, with directions that a new judgment be entered awarding to defendant the relief prayed for in said cross-bill.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment dismissing plaintiff's petition is affirmed; and the judgment dismissing defendant's cross-bill is reversed, and the cause remanded, with directions that a new judgment be entered awarding to defendant the relief prayed for in said cross-bill. *Haid, P. J.*, and *Becker* and *Nipper, JJ.*, concur.